IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ELSA OLIMPIA MONGE, ET AL., : | |
| Plaintiffs, : | |
| : | CIVIL NO. 09-3144-WDQ |
| v. : | |
| : | |
| PORTOFINO RISTORANTE, ET AL., : | |
| Defendants. : | |

…o0o…

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff Elsa Olimpia Monge's Motions for Default Judgment as to Defendants Portofino Ristorante and Atae Zamini.[1] Paper Nos. 7 & 8. On March 11, 2010, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Quarles referred this case to me to review Plaintiff's Motions and to make recommendations regarding damages. Paper No. 9. I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Local Rule 105.6. For the reasons stated herein, I recommend that Plaintiff's Motions for Default Judgment be GRANTED and that damages be AWARDED, as set forth herein.

### I. Factual and Procedural History

Defendant Zamini is the "sole proprietor or corporate officer and/or manager of Portofino Ristorante with executive authority." Compl. ¶ 6, Paper No. 1. Defendants hired Plaintiff on

---

[1] Although Local Rule 105.1 requires a memorandum to be filed with every motion, Plaintiff failed to file a supporting memorandum. Nonetheless, Fed. R. Civ. P. 1 instructs the Court to construe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Therefore, the Court will not exalt form over substance, and it will address the Motion despite the absence of a memorandum.

July 2, 2007 to perform cooking, cleaning, and other similar services at Defendants' restaurant, Portofino Ristorante. Compl. ¶¶ 8-9, Paper No. 1; Monge Aff. ¶¶ 2-3, Paper Nos. 7-3 & 8-3.[2]

On November 23, 2009, Plaintiff[3] filed a complaint against Defendants, alleging that Defendants failed to pay Plaintiff overtime and other wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 – 219 (1998 & Supp. 2007) ("FLSA"); the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 – 3-431 (2008) ("MWHL"); and/or the Maryland Wage Payment Collection Law, Lab. & Empl. §§ 3-501 – 3-509 ("MWPCL"). Compl. ¶¶ 17, 33, 40, & 45. According to Plaintiff, she worked for Defendants an average of 68 hours per week from July 2, 2007, until she left in August 2009. Compl. ¶¶ 8, 12, & 20; Monge Aff. ¶ 4. Plaintiff claimed that Defendants did not "pay Plaintiff her proper overtime wages" and "unjustifiably withheld wages in the amount of $1,200 from Plaintiff's paycheck." Compl. ¶¶ 17 & 19. She sought "compensation in an amount consistent with [her] entitlement under the FLSA," MWHL, and MWPCL; "additional compensation in the form of . . . mandated liquidated damages" under the three statutes; costs; attorney's fees; and "any amounts necessary to compensate [her] for breach of contract" and "Defendants' unjust enrichment." Compl. ¶¶ 6-7.

The Clerk of Court issued a Summons to Defendants on November 24, 2009. Paper No. 2. The Summons and Complaint were served on Atae Zamini on December 16, 2009, by leaving copies with Karim Zamini, his father, at Defendant Zamini's place of abode. Paper No. 3-1. Because Portofino Ristorante had "closed," the Summons and Complaint were served on

---

[2] Plaintiff attached the same three affidavits to both of her Motions as exhibits: Plaintiff's Affidavit, Paper Nos. 7-1 & 8-1; Affidavit of Counsel Fees, Paper Nos. 7-2 & 8-2; and Affidavit of Elsa Olimpia Monge, Paper Nos. 7-3 and 8-3.

[3] Plaintiff filed her Complaint "[f]or herself and on behalf of all similarly situated individuals," Compl. 1, but the action was never certified as a class action. Therefore, the recommendations contained herein only pertain to the relief that should be granted to Plaintiff Monge individually.

Portofino Ristorante on December 16, 2009, by leaving copies with Karim Zamini at Defendant Zamini's place of abode. Paper No. 3-2. Defendants did not respond.

Plaintiff filed Motions for Entry of Default as to Defendants Portofino Ristorante and Zamini on January 20, 2010. Paper Nos. 4 & 5. The Clerk entered an Order of Default as to both Defendants on January 27, 2010. Paper No. 6.

Plaintiff filed Motions for Default Judgment as to both Defendants on March 10, 2010. Plaintiff's Motions do not state an amount of damages, and Plaintiff failed to file a supporting memorandum. Nonetheless, Plaintiff's affidavits and proposed Order for Default Judgment state that Plaintiff is "owed $101,460.00 . . . for overtime wages and the work [she] did on behalf of Defendants and was not compensated for," as well as attorney's fees, Monge Aff. ¶¶ 10-11, or put another way, "the sum of $109,159.20 which is inclusive of full compensation to Plaintiff under the FLSA, MWHL, and MWPCL, including FLSA mandated liquidated damages and MWPCL treble damages, costs of these proceedings, and reasonable attorneys' fees." Pl.'s Aff. ¶ 5; *see* proposed Order, Paper Nos. 7-4 & 8-4 (same). Specifically, by Plaintiff's calculations, for unpaid overtime wages, Defendants owe her liquidated damages of $94,080.00, which represents a doubling of overtime payments at a rate of $15.00 per hour (that is, time and a half, with a base pay of $10.00 per hour) for 28 hours of overtime per week for the 112 weeks of her employment from July 2, 2007 through August 28, 2009. Monge Aff. ¶¶ 4-5 & 7. Further, she alleges that Defendants owe her treble damages under the MWPCL for the three weeks in August 2009 in which she received no pay, although she worked 120 regular hours at $10.00 per hour and 84 overtime hours at $15.00 per hour, and therefore should have received $2,460.00. Monge Aff. ¶¶ 8-9. Trebled, the damages for hours worked during those three weeks total $7,380.00. Monge Aff. ¶ 9. Of import, Plaintiff includes her unpaid overtime wages for the last

3

three weeks in both of her calculations, doubling them in one instance and trebling them in the other. Monge Aff. ¶¶ 4-5, 7, & 9. Plaintiff's counsel identifies court costs and fees totaling $440, plus attorney's fees in the amount of $7,259.20 for 20.8 hours at a rate of $349.00 per hour. Aff. of Counsel Fees ¶¶ 16-17.

**II.    Discussion**

   **A.  Default Judgment**

Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *See Medunic v. Lederer*, 64 F.R.D. 403, 405 n.7 (E.D. Pa. 1974) (concluding that clerk could not enter default judgment where damages were not liquidated), *reversed on other grounds*, 533 F.2d 891 (3d Cir. 1976).

> If the sum is not certain or ascertainable through computation, Rule 55(b)(2) provides:
>
> [T]he party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to:
>
>> (A) conduct an accounting;
>>
>> (B) determine the amount of damages;
>>
>> (C) establish the truth of any allegation by evidence; or
>>
>> (D) investigate any other matter.
>
> As the Court noted in *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006):
>
> The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). However, default judgment is available when the "adversary process has been halted because of an essentially unresponsive party." *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

4

As noted, Defendants received the Complaint on December 16, 2009, but did not respond.[4] Thus, all of Plaintiff's allegations—other than those pertaining to damages, as discussed *infra*—are deemed admitted. Fed. R. Civ. P. 8(b)(6). Plaintiff moved for an entry of default on January 27, 2010, and a default judgment on March 10, 2010, and Defendants still did not respond. It is within the court's discretion to grant default judgment when a defendant does not respond or defend its case. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment when the defendant lost its summons and did not respond within the proper period); *Disney Enters.,* 446 F. Supp. 2d at 405–06 (holding that entry of default judgment was proper because defendant had been properly served with complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *see also S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment was appropriate because defendant was "unresponsive for more than a year" after denial of his motion to dismiss, even though he was properly served with plaintiff's motions for entry of default and default judgment). Four months have passed since Defendants received the Complaint, yet they still have not responded. Thus, the Court should grant default judgment.

**B. Damages**

An allegation "relating to the amount of damages" is not deemed admitted based on a defendant's failure to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6); *see Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Pentech Fin.*

---

[4] Service on a corporation is proper if made on an officer of the corporation, Rule 4(h)(1)(B), and Defendant Zamini is an officer of Defendant Portofino Ristorante, Compl. ¶ 6. Defendants had twenty-one days after service to respond. Fed. R. Civ. P. 12(a)(1).

*Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("[D]efault is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

Therefore, on default judgment, the Court may only award damages without a hearing if the record supports the damages requested. *See, e.g.*, *Pentech*, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against Defendant because Plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought); *DirecTV, Inc. v. Yancey*, No. Civ.A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that a hearing was "not required to enter default judgment" because Plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits"); *JTH Tax, Inc. v. Smith*, No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) (holding that damages could be awarded without hearing upon default judgment against Defendant because Plaintiff submitted invoices documenting the money owed to Plaintiff); *see also Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 (S.D. Ala. 2007) (noting that an entry of default judgment "in no way obviates the need for determinations of the amount and character of damages," but an evidentiary hearing is not required if "all essential evidence is already of record"); *see also Maloney v. Disciples Ltd., LLC*, No. 1:06CV00124, 2007 WL 1362393, at *2 (M.D.N.C. May 8, 2007) (noting that, in cases concerning default judgments and promissory notes, "it is not necessary to conduct a hearing and . . . damages may be determined by way of affidavit and other documentary evidence").

Proceeding without a hearing is the exception: "Claims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 318 (E.D.N.Y. 2007); *see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (same).

Here, Plaintiff seeks compensation for hours she worked for which Defendants did not pay here. The FLSA provides that, for any hours worked in excess of forty hours per week, an employee shall "receive[] compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. Similarly, Lab. & Empl. § 3-415(a) provides that "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage," and § 3-420(a) provides that overtime wages shall be computed "on the basis of each hour over 40 hours that an employee works during 1 workweek." Further, under the federal law,

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee . . . affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b). Under state law, "[i]f an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle," as well as costs and attorney's fees. Lab. & Empl. § 3-427(a) & (d).

With regard to the payment of regular wages, the MWPCL provides than an employer "shall pay each employee at least once in every 2 weeks or twice in each month," Lab. & Empl. § 3-502(a)(1)(ii), and that an employer shall notify an employee, at the time of hire, of his or her

7

rate of pay; shall not decrease the wage without advance notification equivalent to the length of a pay period; and shall pay the employee all wages due upon termination, *id.* § 3-505(a). The employee has a cause of action against the employer under § 3-507.1(a), and § 3-507.1(b) provides that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Both Maryland and federal law require that employers keep records of employees' wages and hours. 29 U.S.C. § 211(c); Lab. & Empl. § 3-424.

It is true that, pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Federal Practice and Procedure* § 2663 explained the "theory of this provision":

> [T]he defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

WRIGHT & MILLER, 10 FED. PRAC. & PROC. CIV. § 2663 (3d ed. 1998) (footnote omitted).

Interpretation of Rule 54(c) has "led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not 'exceed in amount that prayed for in the demand for judgment.'" *Lopez v. NTI, LLC*, No. DKC 2008-1579, 2008 WL 5120542, at *2 (D. Md. Dec. 4, 2008) ("*NTI*"). The Fourth Circuit observed:

> When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages. *See, e.g., Compton v. Alton Steamship Co.*, 608 F.2d 96, 104 (4th Cir. 1979); *Producers Equip. Sales, Inc. v. Thomason*, 15 Kan. App. 2d 393, 808 P.2d 881, 886 (Kan. Ct. App.1991). The rationale is that a default judgment cannot be greater than the specific amount

8

> sought because the defendant could not reasonably have expected that his damages would exceed that amount.

*In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) (quoted in *NTI*, 2008 WL 5120542, at *2). Additionally, the Fourth Circuit stated that in cases such as this one in which the complaint does not specify an amount of damages, some courts "have reasoned that as long as the defendant receives notice that some damages may be awarded, general allegations of actual damages suffice to support a default judgment," and courts have entered "a default judgment for money damages when the complaint requests no specific amount," while others have concluded that a default judgment for greater damages than those sought in the complaint violates Rule 54(c). *Id.* at 133 (certifying question to Supreme Court of Hawai'i, which held that "a default judgment is not void for violating HRCP Rule 54(c) [which has identical language to Fed. R. Civ. P. 54(c)], unless the violation deprived the defaulting party of due process by failing to provide notice of the scope of the claim and a meaningful opportunity to defend against it," *In re Genesys Data Techs., Inc.*, 18 P.3d 895, 902 (Hawai'i 2001)).

*Graduate Management Admission Council v. Lei Shi*, No. 1:07cv605, 2007 WL 4692777 (E.D. Va. Dec. 11, 2007), *adopted in part by* 2008 WL 112047 (E.D. Va. Jan. 7, 2008), is informative. There, the plaintiff filed a complaint seeking statutory damages in an unspecified amount. *Id.* at *4. In reviewing the plaintiff's motion for default judgment, the court noted that "Rule 54(c) expressly limits the amount of damages in a default case to the amount pled in the complaint." *Id.* at *5. Yet, the court granted the plaintiff's motion and awarded over $7 million in damages, reasoning that "[c]onsistent with Rule 54(c) and Fourth Circuit case law, Plaintiff's Complaint . . . was not at odds with the specified damages sought in Plaintiff's Memorandum in Support of their Motion for Default Judgment" because the complaint "was silent as to a specific request for damages" and therefore the plaintiff did not "seek[] an award in excess of the amount

9

pled in the Complaint." *Id.* Further, the court stated that the plaintiff "substantiate[d] the request for an award of damages through its Motion, Memorandum in Support thereto, and numerous exhibits of the Defendant's conduct . . . ." *Id.*

Here, Plaintiff did not indicate her hourly wage in her Complaint, and she did not specify the total amount of damages. *See* Compl. Thus, Plaintiff does not violate Rule 54(c) by seeking damages of $109,159.20, because her Complaint did not state a lesser amount. *See Graduate Mgmt. Admission Council*, 2007 WL 4692777, at *5.

Further, Plaintiff included an affidavit and proposed order with her Motions for Default Judgment, and those documents asserted the amount of damages as "the sum of $109,159.20 which is inclusive of full compensation to Plaintiff under the FLSA, MWHL, and MWPCL, including FLSA mandated liquidated damages and MWPCL treble damages, costs of these proceedings, and reasonable attorneys' fees." Pl.'s Aff. ¶ 5; *see* proposed Order. Additionally, in her affidavit, Plaintiff states her hourly wage, the number of hours for which she was not paid her regular salary, and the number of hours for which she was not paid overtime. Monge Aff. ¶¶ 5, 7, 9. Therefore, in keeping with the purpose of Rule 54(c), Defendants had notice of the damages through the documents supporting Plaintiff's motion, and they had the opportunity to defend by opposing the motion. *See In re Genesys Data Techs.*, 204 F.3d at 132; *NTI*, 2008 WL 5120542, at *2; 10 FED. PRAC. & PROC. CIV. § 2663.

Moreover, as Plaintiff's employers, Defendants were required under both federal and Maryland law to keep records of Plaintiff's hours and wages. *See* 29 U.S.C. § 211(c); Lab. & Empl. § 3-424; *Lopez*, 2008 WL 2227353, at *3 n.5. Also, 29 U.S.C. § 216(b) and Lab. & Empl. § 3-507.1 alert employers to the mandatory liquidated damages under the federal statute and the possibility of treble damages under the state statute, as well as costs and attorney's fees.

Therefore, upon receipt of the Complaint, Defendants could calculate the extent of their liability based on the statutorily-required records and statutory provisions for liquidated damages, costs, and attorney's fees. Thus, Defendants had sufficient notice of the amount of their potential liability without inclusion of an exact figure in Plaintiff's Complaint. *See In re Genesys Data Techs.*, 204 F.3d at 132; *NTI*, 2008 WL 5120542, at *2; 10 FED. PRAC. & PROC. CIV. § 2663.

Although in *NTI*, 2008 WL 5120542, at *2, 6, the plaintiffs did not specify an amount of damages and the court, quoting extensively from *Genesys*, deferred the plaintiffs' motion, that case is readily distinguished from the matter before the Court. There, in a class action under the FLSA, MWHL, and MWPCA with seven named plaintiffs, the plaintiffs alleged that the employer/defendants "failed to pay them minimum wage for hours worked and overtime wages for hours worked in excess of 40 hours per week." *Id.* at *1. After filing their complaint, the plaintiffs filed "Consent Forms to be Claimants" for more than twenty additional claimants. *Id.* The court noted that, as amended, the complaint sought, "*for the named plaintiffs only*, declaratory relief and unspecified amounts of wages and damages, prejudgment interest, costs, and attorneys fees." *Id.* at *2 (emphasis added).

The plaintiffs moved for a default judgment. *Id.* As noted, the court deferred the motion, reasoning that "[t]here may well be doubt about the nature and extent of any default judgment that may be entered under these circumstances." *Id.* at *2, 6. But, the court directed the plaintiffs to "clarify . . . which plaintiffs (or claimants) are included in the default sought (and if more than the seven named, the basis for such request." *Id.* at *1. Thus, the uncertainty in the total damages sought apparently stemmed not from the amount of damages per plaintiff, but from the number of plaintiffs.

Here, although Plaintiff filed a "Collective and Class Action Complaint," no other claimants filed Consent Forms to be Claimants. Also, Monge was the only Plaintiff to file an affidavit with the Motions for Default Judgment, and she only referred to herself individually in the affidavit. *See* Monge Aff. ¶ 1 ("I am the Plaintiff . . . ."); ¶ 7 ("I am owed the following . . . ."). Moreover, the supporting affidavits filed with Plaintiff's Motions for Default Judgment refer only to "the sum of $109,159.20 which is inclusive of full compensation to Plaintiff under the FLSA, MWHL, and MWPCL," costs, and attorney's fees. Pl.'s Aff. ¶ 5. Therefore, the number of plaintiffs seeking damages (one, i.e., Monge) is clear, as is the amount of damages she seeks ($109,159.20)

The amount Defendants owe Plaintiff is calculated based on Plaintiff's rate of compensation and the number of unpaid hours she worked. "In cases such as the present one in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, [the employee] must show the amount and extent of [her] improperly compensated work 'as a matter of just and reasonable inference.'" *Lopez v. Lawns 'R' Us*, Civil No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008) (quoting *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("Due regard must be given to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof."), *superseded by statute on other grounds as stated in Carter v. Panama*

*Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). Moreover, an employee's statement under oath "as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed," and if the employer does not successfully rebut the employee's statement, "[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate."[5] *Lopez*, 2008 WL 2227353, at *3 (discussing employees' testimony at hearing). In this regard, *Lopez*, 2008 WL 2227353, is informative.

The *Lopez* plaintiffs brought claims under the FLSA "for all unpaid wages for regular hours worked, and for overtime pay for hours worked in excess of forty (40) per week, in such amounts to be proved at trial"; under the MWPCL "for all unpaid wages and overtime due"; and "for all unpaid overtime wages under the MWHL in such amounts to be proven at trial," as well as liquidated damages, interest, attorney's fees and costs, and. *Lopez* Compl. 5-7. After the Clerk made an entry of default against the defendants/employers, a damages hearing ensued. *Lopez*, 2008 WL 2227353, at *1. Noting that "[e]ach Plaintiff provided credible testimony as to his recollection of the hours he worked and the pay he received, and Defendants have failed to rebut the inference created by the Plaintiffs' evidence," Magistrate Judge Schulze recommended that "the Court find that Plaintiffs have satisfied their burden of establishing that each did work for Defendants for which he never received compensation," and accept the figures that each plaintiff provided in his testimony. *Id.* at *4.

---

[5] In *Lopez*, 2008 WL 2227353, at *3 n.5, Magistrate Judge Schulze noted that "[t]hese standards apply to FLSA claims . . . . but application of the FLSA standards [to MWCPL claims as well] is appropriate in light of Maryland's similar requirement that employers keep records of employees' hours and wages" and that "[c]ases indicate that the same kind of evidence— including an employee's testimony—would be competent under Maryland law."

Here, Plaintiff similarly, credibly established her rate of pay and the number of regular and overtime hours for which she did not receive compensation, albeit by affidavit instead of testimony. Monge Aff. ¶¶ 4-5, 7, & 8-9. I find that Defendants failed to compensate Plaintiff for 120 hours of regular pay, for which she should have received $10.00 per hour, or a total of $1,200. *See* Lab. & Empl. § 3-502(a)(1)(ii) (requiring payment of wages). Pursuant to Lab. & Empl. § 3-507.1(b), Defendants are liable to Plaintiff for up to $3,600 in treble damages for unpaid regular wages, at the Court's discretion. In *Lopez*, 2008 WL 2227353, discussed *supra*, the court noted that "[e]nhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Id.* at *4. It awarded "two times [plaintiffs'] unpaid regular wages," reasoning that although the defendants "did not offer any evidence of a bona fide dispute" to make liquidated damages inappropriate, plaintiffs "did not offer any evidence of consequential damages suffered because of the underpayments." *Id.* Here, Defendants have not offered any evidence of a bona fide dispute. But, as in *Lopez*, Plaintiff has not offered any evidence of consequential damages; nor did she claim consequential damages in her Complaint. Therefore, I recommend that the Court double, rather than treble, Plaintiff's unpaid regular wages, and award Plaintiff $2,400 for unpaid regular wages.

Plaintiff erroneously included her overtime hours for three weeks in August 2009 twice in her calculations. Therefore, in keeping with Plaintiff's affidavit but recalculating for her error, I find that Defendants failed to compensate Plaintiff for 28 hours of overtime pay per week for 112 weeks, for which she should have received $15.00 per hour, or a total of $47,040. *See* 29 U.S.C. § 207 (requiring overtime pay); Lab. & Empl. §§ 3-415(a) & 3-420(a) (same).

Additionally, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiff for an additional $47,040 in mandatory liquidated damages for unpaid overtime wages. Therefore, I recommend that the Court award Plaintiff two times $47,040 for unpaid overtime wages, or $94,080.

### C. Attorney's Fees

29 U.S.C. § 216(b) and Lab. & Empl. §§ 3-507.1 & 3-427(d) provide for the payment of the employee's costs and attorney's fees by the employer. In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted). The plaintiff "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (concluding, after an initial determination that the attorney's hourly rate was reasonable for the particular district, that attorney's fees requested by Plaintiff, based on documentation of hours worked and tasks completed, were reasonable); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007) (awarding requested attorney's fees based on affidavits and the record). Of import, Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, states that attorneys admitted to the bar for fewer than five years may reasonably bill $150-90 per hour. *Id.* at Local Rules App'x B, at 3.a. When entering a default judgment, the Court may make an award of attorney's fees for a lesser amount than the moving party requested. *See DirecTV v. Agee*, 405 F. Supp. 2d 6, 8 (D.D.C. 2005)

(concluding, on granting default judgment, that "plaintiff's requested relief … for attorneys' fees [was] excessive" and awarding half of what was requested in the plaintiff's motion).

Here, Plaintiff asks for $7,259.20 in attorney's fees and offers an affidavit in support of the amount requested. Aff. of Counsel Fees ¶ 17. Allan E. Feldman, Esquire, an attorney admitted to the bar for approximately four and a half years, billed Plaintiffs for 20.8 hours of work at $349.00 per hour. *Id*. The filings in this case include a Complaint, drafted as a class action although no steps were taken towards certification; two Motions for Entry of Default; and two Motions for Default Judgment. Paper Nos. 1, 45-, 7-8. I find that 20.8 hours is a reasonable amount of time, but $349.00 per hour is not a reasonable hourly rate under the Local Rules Guidelines. Although the Guidelines are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," $349.00 per hour greatly exceeds the recommended maximum. Local Rules App'x B, at 3.a. I find that $200.00 per hour would be a reasonable rate for Mr. Feldman's time. *See id.* Therefore, I recommend that the Court grant $4,160.00 in attorney's fees for 20.8 hours of Mr. Feldman's time at $200.00 per hour.

### D. Costs

Plaintiff also requests costs be awarded, namely $350.00 for the court filing fee and $90.00 for the service of process fee, for a total of $440.00. Aff. of Counsel Fees ¶ 16. In an FLSA action, the "[p]ayment of costs to a prevailing plaintiff is mandatory. . . ." *Lopez*, 2008 WL 2227353, at *7. Under FLSA, and other similar fee-shifting statutes, "the costs that may be charged to losing defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Id.* (finding a $350 filing fee and a $200 service process fee "well within the categories of normal and necessary costs of litigation that would normally be charged to paying

16

clients"). I find that Plaintiff's request of is reasonable and recommend that the Court award Plaintiff $440 in costs.

## III. Conclusion

In sum, I recommend that:

(1) the Court grant Plaintiff's Motions for Default Judgment;

(2) the Court award Plaintiff $2,400 for unpaid regular wages; $94,080 for unpaid overtime wages; $4,160.00 in attorneys' fees; and $440.00 in costs.

The parties have fourteen (14) days in which to file objections to this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: <u>May 3, 2010</u> _____/s/_____
                                                                             Paul W. Grimm
                                                                             United States Magistrate Judge

lmy